**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD P.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   23-cv-5120** |
| | : | |
| **MARTIN O'MALLEY,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OPINION**</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **November 25, 2024**

Plaintiff Edward P. brought this action seeking review of the Commissioner of Social Security Administration's decision denying his claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 9) is **DENIED**.

I.      **PROCEDURAL HISTORY**

On January 31, 2017, Plaintiff protectively filed for SSI, alleging disability since November 19, 2016, due to pancreatitis, diabetes (not insulin-dependent), high cholesterol, back pain, depression and possible carpel tunnel. (R. 111, 180-82, 218, 230). Plaintiff's application was denied at the initial level, and he requested a hearing before an Administrative Law Judge (ALJ). (R. 114-23). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the February 6, 2019 administrative hearing. (R. 30-59). On May 14, 2019, the ALJ issued a decision unfavorable to Plaintiff. (R. 15-24). Plaintiff appealed the ALJ's decision, but the Appeals Council denied Plaintiff's request for review on July 14, 2020, thus making the ALJ's

decision the final decision of the Commissioner for purposes of judicial review. (R. 1-6).

On September 14, 2020, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. (*Edward P. v. Saul*, No. 2:20-cv-4501 (Compl., ECF No. 1)). After briefing by the parties and a referral by the Honorable Mitchell S. Goldberg, I issued a Report and Recommendation on November 17, 2021, recommending that Plaintiff's request for review be granted and that the matter be remanded for further consideration by the ALJ of whether a borderline age situation existed and, if so, whether the higher age grid rules should be applied. (*Id.* (Order, ECF No 19; R & R, ECF No. 20, at 19)). On December 3, 2021, Judge Goldberg adopted my Report and Recommendation and remanded the matter to the Commissioner for further proceedings. (R. 2064).

On June 2, 2022, the Appeals Council vacated the ALJ's decision and remanded the case to him for additional proceedings. (R. 2090). Following a new hearing on March 28, 2023, the ALJ issued another unfavorable decision on August 29, 2023. (R. 2020-32, 2039-2063). On December 27, 2023, Plaintiff filed a direct appeal in this court, and on December 27, 2023, he consented to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Compl., ECF No. 1; Consent, ECF No. 4). On May 14, 2024, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 9). The Commissioner filed a response on June 13, 2024, and on June 26, 2024, Plaintiff filed a reply. (Resp., ECF No. 10; Reply, ECF No. 11).

## II.    FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on October 15, 1964, and was 52 years old on the alleged amended disability onset date. (R. 250). He has a bachelor's degree in engineering. (R. 35). Plaintiff

2

previously worked as a general manager/partner for a service station management company, an operations manager/partner for a wholesale distributor, and a management information systems department manager for a military engineering contractor. (R. 287).

### A.    Medical Evidence

On August 3, 2017, psychological consultative examiner Brook Crichlow, Psy.D., conducted a mental status evaluation of Plaintiff. (R. 691-700). She noted that although Plaintiff received treatment for past alcoholism, he had never been hospitalized for psychiatric reasons and was not taking any psychiatric medication. (R. 694). Plaintiff reported difficulty sleeping, excessive worry due to financial problems, limited appetite, constant depressed mood, hopelessness, lack of motivation, feelings of worthlessness, fatigue, anhedonia, isolation, social anxiety, difficulty finishing tasks due to lack of focus, and "panic like sensations" during which he experiences breathing difficulties, trembling, feeling as if the sky is falling, and feeling "knocked out" and "totally inactive." (*Id.*). He reported 10 years of alcoholism but had been "sober for years" except for a recent instance in which "he may have had a drink a few months ago." (R. 695). However, at the time of the examination, he was on probation and his license was suspended due to a DUI. (*Id.*).

Mental examination results were normal except Plaintiff had a moderately depressed mood and affect, could not remember his age, and demonstrated mildly impaired recent and remote memory due to depression. (R. 695-96). Judgment and insight were fair and intellectual functioning was low average. (R. 696). He reported that he can engage in personal care and perform household chores but that his girlfriend primarily handles the latter due to his low motivation. (*Id.*). Plaintiff denied any hobbies and stated that he spends his time online looking for work. (*Id.*). His prognosis was fair due to "the nature of his difficulties" and his lack of mental health treatment, although the examiner noted that he was in the process of setting up an

appointment.  (R. 697).

In the attached Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Crichlow assessed no limitations in understanding, remembering and carrying out simple instructions, but mild limitations with complex ones and with making judgments on simple and complex work-related decisions due to excessive worry, chronic depression limiting motivation, and focusing difficulties leading to extended time needed in completing tasks.  (R. 698).  She further assessed mild limitations in interacting appropriately with the public and moderate limitations in interacting with all others and in responding appropriately to usual work situations and changes in routine, for primarily the same reasons as stated above as well as his panic-like sensations and social anxiety and avoidance.  (R. 699).  However, Dr. Crichlow determined that Plaintiff was not limited in his abilities to concentrate, persist or maintain pace or to adapt or manage oneself.  (*Id.*).

On August 28, 2017, medical consultative examiner Andrea Woll, D.O., conducted an internal medicine evaluation of Plaintiff.  (R. 701-18).  He complained of fainting, likely due to pancreatitis or low blood sugar, with the last episode approximately one month prior and the one before that in 2017.  (R. 703).  He claimed that during his gallbladder surgery he was observed to have liver cirrhosis.  (*Id.*).  He reported stopping drinking in 2015, but he continued to experience pancreatitis with his last episode six months prior to the examination.  (*Id.*).  He indicated that he was on medication for diabetes, hyperlipidemia, and hypertension.  (*Id.*).  Plaintiff described lower back pain that "usually does not cause problems," although when it does the pain is "excruciating."  (R. 704).  He further stated that he has numbness in his hands, primarily in the fingertips and the hypothenar eminence of the right hand, although the examiner added that he had an upcoming neurological appointment and was able to zip, button and tie.  (*Id.*).  Plaintiff repeated that he engages in personal care but that his girlfriend handles all other

4

household chores. (R. 705). Physical examination results were largely normal with full strength in his extremities and grip and the ability to squat three-quarters. (R. 706-07). He was assessed a fair prognosis. (R. 707).

In the attached Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Woll determined that Plaintiff could continuously lift and carry up to 20 pounds but never more than that. (R. 708). Next to the chart reflecting these findings she wrote: "Claims he can't lift or carry since surgery March 2017 more than 10 lbs – 20 lbs[.]" (*Id.*). She further found that Plaintiff could sit for six hours at a time and in an eight-hour workday, stand for three hours at a time and four hours per workday, and walk for four hours at a time and five hours per workday. (R. 708). She added that Plaintiff can perform all manipulations and operate foot controls bilaterally and continuously, never climb ladders or scaffolds, frequently climb stairs and ramps, and engage in all other postural activities occasionally. (R. 708-11). Dr. Woll also concluded that Plaintiff could tolerate extreme cold, humidity and wetness occasionally and noise, vibrations, extreme heat and pulmonary irritants frequently, but never unprotected heights or moving mechanical parts. (R. 712). Nor could Plaintiff operate a motor vehicle. (*Id.*). However, she found that Plaintiff could shop, travel alone, walk unassisted at a reasonable pace, use public transportation, prepare simple meals, care for personal hygiene, handle paper files and climb steps. (R. 713). His range of motion was also within normal limits for all examined body movements except spinal flexion, which was limited to 60 percent rather than the full range of 90 percent. (R. 715-18).

On September 18, 2017, State agency physician Mark Bohn, M.D., opined that Plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally, otherwise push and pull without limitation, sit and stand/walk for up to six hours per workday, occasionally climb ramps and stairs, and frequently balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes,

and scaffolds. (R. 104-05). He added that Plaintiff has no manipulative or environmental limitations, except that he should avoid concentrated exposure to hazards (such as machinery and heights), extreme cold and respiratory irritants. (R. 105).

Three days later, State agency psychologist James Vizza, Psy.D., opined that Plaintiff had medically determinable impairments of, *inter alia*, anxiety and obsessive-compulsive disorders, substance addiction disorders (alcohol), and depressive, bipolar and related disorders. (R. 101). He assessed mild limitations in understanding, remembering or applying information and in adapting or managing oneself, as well as moderate limitations in interacting with others and in concentrating, persisting or maintaining pace. (R. 102).

After Plaintiff was involved in a motor vehicle accident on August 17, 2017, he attended physical therapy at Infinity of Care – Physical Therapy and Sports Rehabilitation in Feasterville, Pennsylvania, throughout the remainder of the year. (R. 1579-1614). During this time, Plaintiff experienced gradually decreased lower back pain, improvements in the neck and upper back, and less difficulty performing activities of daily living (ADLs). (R. 1614).

An October 18, 2020 chest x-ray showed marked scoliosis and mild lingula subsegmental atelectasis/scarring or pneumonia but with otherwise clear lungs and no pleural effusion or pneumothorax. (R. 2217).

On September 14, 2020, Plaintiff underwent an exercise stress test. (R. 2493). It was terminated after 10 minutes due to fatigue. (*Id.*). During the test, Plaintiff's heartbeat rose from 69 beats per minute at rest to 118 beats per minute, representing 71 percent of his maximum heart rate. (*Id.*).

On October 7, 2020, Plaintiff underwent a CT scan of his abdomen due to epigastric pain. (R. 2215). Pertinent impressions included a probable pericardial cyst, findings consistent with chronic pancreatitis and portal hypertension, and a tiny, fatty umbilical hernia. (*Id.*).

6

On May 16, 2021, Plaintiff was admitted to Holy Redeemer Hospital in Meadowbrook, Pennsylvania, due to a possible brief loss of consciousness and abdominal pain.  (R. 2334, 2338).  His serum alcohol level tested at "over 300" and his symptoms were "likely due to alcohol intoxication."  (R. 2334, 2336).  By the following day, his abdominal pain ceased, and he was cleared for discharge the morning after that.  (R. 2338, 2351).  While hospitalized, he underwent a CT scan of his abdomen and pelvis and an MRI of his brain.  (R. 2342-43, 2391-93).  The CT scan showed, *inter alia*, lower lumbar spine facet arthropathy and degenerative disc disease at the L5-S1 vertebra.  (R. 2342).  The MRI revealed "a small to moderate-sized area of encephalomalacia in the right posterior frontal/parietal region, in keeping with cortical laminar necrosis," but without evidence of acute intracranial hemorrhage.  (R. 2392).

Two July 6, 2021 chest x-rays showed deformity of the bony thorax because of moderate/marked S-shaped thoracolumbar scoliosis with mid-thoracic spine convexity toward the right.  (R. 2471).

On May 15, 2022, Plaintiff underwent CT scans of his chest, abdomen and pelvis.  (R. 2438-39).  The chest CT showed severe dextroscoliosis of the thoracic spine and severe coronary artery calcifications but no acute pulmonary abnormalities.  (R. 2438).  The CT of the abdomen and pelvis showed pneumobilia and features of chronic pancreatitis with surrounding inflammatory changes.  (R. 2440).

On October 23, 2022, a chest x-ray again showed a small patchy opacity in the right lung, consistent with atelectasis or developing pneumonia.  (R. 2421).

### B.    Non-Medical Evidence

The record also contains non-medical evidence.  In an Adult Function Report dated August 1, 2017, Plaintiff reported no problems with personal care except dressing due to an inability to bend down.  (R. 238).  He described difficulty sleeping and remembering to take

medication at times.  (*Id.*).  He stated that he does not know how to cook and that unspecified others do his housework for him.  (*Id.*).  He can travel on foot and as a vehicle passenger but does not drive due to a suspended license.  (R. 240).  He is able to manage money and shop online.  (*Id.*).  Additional ADLs include reading, watching television, computer activities, talking on the telephone, occasional meetings, and attending synagogue.  (*Id.*).  Plaintiff checked boxes on the form indicating difficulties with lifting, squatting, bending, standing, sitting, kneeling, completing tasks, concentration and getting along with others.  (R. 242).  He further claimed that he cannot lift more than 25 pounds or walk for more than 15 minutes at a time before needing to rest for five minutes.  (*Id.*).  He can also pay attention for 30 minutes at a time, get along well with authority figures, handle changes in routine, and follow written and spoken instructions well.  (R. 242-43).  As for handling stress, he "had problems w[ith] alcohol in the past [but] was learning to handle stress better."  (R. 243).  However, he has panic attacks during which he fears "the sky is falling."  (*Id.*).

At the February 6, 2019 administrative hearing, Plaintiff testified that he has primarily lower back pain with "serious problems with [his] left leg in general."  (R. 36).  The back pain is constant, at least at some level, and the leg pain is daily but fluctuating in severity and prevents him from sitting longer than an hour, standing longer than 30 minutes, or walking longer than 15 to 20 minutes.  (R. 37-39).  However, physicians have told him that "[t]here's nothing to operate" on and that "they cannot find anything" that would correct his problems.  (R. 36).  Accordingly, his treatment has been limited to ibuprofen (as needed), "maintenance, constant attendance, and chiropractic effects."  (*Id.* at 36-37).  He further reported "a stomach hernia which [he] didn't take care of yet," resulting in "very limited" ability to lift objects (restricted to a maximum of 25 pounds and not consistently).  (R. 36, 39).  Plaintiff estimated that he can only bend 20 percent and must sit on a chair to put on socks, shoes, and pants, although he explained

that he could get on his knees "with difficulty." (R. 40). He denied any sleeping problems. (*Id.*).

Plaintiff described fluctuating numbness in his hands and legs, due to neuropathy or, in the case of his left hand, possibly a pinched nerve. (R. 38, 41). He has diabetes. (R. 51). As for his issues with alcohol, he noted that he had been "doing very nicely" for the prior seven months while attending thrice weekly meetings. (R. 42). He added that he has pancreatitis, which requires him to sit up straight to alleviate pressure from bending, but that he has been "feeling better" since becoming sober and, especially, having his inflamed gall bladder surgically removed. (R. 39, 42). He testified that he was prescribed an antidepressant for depression but "never really did take it" because he has "an issue with taking medications that [he is] not sure [he] need[s]." (R. 43). Plaintiff attested to suffering from panic attacks and allegedly age-related difficulties concentrating. (*Id.*). His ADLs included searching online for work, watching television, laundry, and assisting with grocery shopping and house chores. (*Id.* at 43-45). He reported a prior work history including, *inter alia*, owning and operating "a number" of gas stations. (R. 46).

Plaintiff also testified on remand at a March 28, 2023 administrative hearing, where he provided the following new or updated information. He elaborated that his prior position as a home health aide in 2020 to 2021 involved performing light household chores for his father and neighbor but maintained that if "they would be outside clients [he] would not be fully able to do the job" because he could not lift and bathe them. (R. 2046-47). He described a separate position in which he "perform[ed] some light computer work, some basic hardware repair." (R. 2049). He claimed that his girlfriend handles all household chores and that he helps only "rarely," "if needed," but that his lack of assistance was not due to medical issues. (R. 2052).

Regarding his medical issues, he complained of "very high diabetes" with associated fainting during episodes of low blood sugar, ongoing numbness in his hands and feet, substantial weight loss without explanation, and the stomach hernia restricting his lifting ability to 10 to 15 pounds. (R. 2050). He characterized his alcoholism as "years ago" and no longer requiring any treatment. (R. 2051). His overall mental health improved with complete cessation from alcohol three or more years prior. (R. 2052). However, he stated that he has ongoing depression, which he "kind of treated in the past," but he acknowledged not seeking treatment "lately" even though he believed he "should." (R. 2051). He reported that he takes "very light medication" for it but opined "that it's not enough." (R. 2052). Plaintiff testified to "really bad" panic attacks but volunteered that he "never took medication" for them. (*Id.*).

## III.    ALJ'S DECISION

Following the most recent administrative hearing, the ALJ issued a decision in which he made the following findings:

1.    The claimant engaged in substantial gainful activity during the following periods: the 3rd quarter of 2021 through the 4th quarter of 2022, and likely continuing through at least the 2nd quarter of 2023 (20 CFR 416.920(b) and 416.971 *et seq.*).

2.    However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity, prior to the 4th quarter of 2021, although medical evidence from early 2023 has also been considered.

3.    The claimant has had the following severe impairments: diabetes mellitus, hypertension, prior alcohol abuse, pancreatitis, spine disorder, and a liver disorder

(20 CFR 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that
        meets or medically equals the severity of one of the listed impairments in 20 CFR
        Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the
        claimant has the residual functional capacity to perform the full range of medium
        work as defined in 20 CFR 416.967(c). Specifically, the claimant can lift and/or
        carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or
        walk up to six hours in an eight-hour workday, and sit up to six hours in an eight-
        hour workday.

6.      The claimant is capable of performing all past relevant work, including work as a
        gas station manager. This work does not require the performance of work-related
        activities precluded by the claimant's residual functional capacity (20 CFR
        416.965).

7.      The claimant has not been under a disability, as defined in the Social Security
        Act, since January 31, 2017, the date the application was filed (20 CFR
        416.920(f)).

(R. 2020-30 (footnote omitted)).  Accordingly, the ALJ found Plaintiff was not disabled.  (R.

2032).


IV.    **LEGAL STANDARD**

        To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that he or she cannot engage in substantial gainful activity because of a

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of at least 12 months.  42

U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity.  If she is not, then the
> Commissioner considers in the second step whether the claimant has
> a "severe impairment" that significantly limits her physical or
> mental ability to perform basic work activities.  If the claimant
> suffers a severe impairment, the third inquiry is whether, based on
> the medical evidence, the impairment meets the criteria of the
> impairment listed in the "listing of impairments," . . . which result
> in a presumption of disability, or whether the claimant retains the
> capacity to work.  If the impairment does not meet the criteria for a
> listed impairment, then the Commissioner assesses in the fourth step
> whether, despite the severe impairment, the claimant has the
> residual functional capacity to perform her past work.  If the
> claimant cannot perform her past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4).  The

disability claimant bears the burden of establishing steps one through four.  If the claimant is

determined to be unable to resume previous employment, the burden shifts to the Commissioner

at step five to establish that, given the claimant's age, education, work experience, and mental

and physical limitations, he is able to perform substantial gainful activities in jobs existing in the

national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a

reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal

issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

In his request for review, Plaintiff raises four claims:

> (1)    Remand is required because the ALJ committed reversible
> and harmful error of law by failing to complete a
> Psychiatric Review Technique (PRT), as required by 20
> C.F.R. § 416.920a.

> (2)    Remand is required because the ALJ did not provide any
> plausible reasons for changing his RFC finding from light
> in the initial decision to medium in the decision issued after
> the federal court remand.

> (3)    The ALJ's finding that Plaintiff had PRW [past relevant
> work] as a home health aide is not supported by substantial
> evidence and represents a reversible and harmful error of
> law.

> (4)    The ALJ's finding that Plaintiff had PRW as a gas station
> manager should have been characterized as light work
> instead of medium is not supported by substantial evidence
> and represents a reversible and harmful error of law.

(Pl.'s Br., ECF No. 9, at 3) (reordered).

### A.    Psychiatric Review Technique

#### 1.    The Parties' Positions

Citing 20 C.F.R. § 416.920a, Plaintiff observes that when evaluating the severity of a

mental impairment, the ALJ must first consider all pertinent clinical signs and laboratory

findings and then rate the degree of limitation caused in the following four broad functional areas

pursuant to a five-point scale ranging from "none" to "extreme": (1) understanding,

remembering or applying information; (2) interacting with others; (3) concentrating, persisting or

maintaining pace; and (4) adapting or managing oneself.  (Pl.'s Br., ECF No. 9, at 6 (citing 20

C.F.R. § 416.920a(a)-(c)(3))).  He notes that the ALJ's decision must incorporate the relevant

findings and conclusions based on the PRT, including a specific finding regarding the degree of

functional limitation in each area.  (*Id.* (citing 20 C.F.R. § 416.920a(e)(4))).  He contends that the

ALJ failed to carry out this process, notwithstanding evidence establishing a medically

determinable mental health impairment.  (*Id.*).

This evidence includes Dr. Crichlow's mental status evaluation referencing treatment for

long-term alcohol dependence and abuse, difficulty falling asleep, limited appetite, depressed

mood, feelings of worthlessness and hopelessness, lack of motivation, anhedonia, fatigue, social

isolation, excessive anxiety due to financial problems induced by health- and alcohol-related

difficulties, "panic like sensations," inability to finish tasks (including ADLs), restless motor

behavior, mildly impaired memory, and diagnoses for various disorders (alcohol use, major

depressive and unspecified anxiety), as well as his assessment of mild and moderate limitations

in mental functioning.  (*Id.* at 6-7 (citing R. 693-99)).  Furthermore, Plaintiff points to Dr.

Vizza's assessment that he suffers from severe mental impairments and requires certain moderate

work-related restrictions; his prescription for Trazodone and Remeron; and a brain MRI showing

two small to moderate areas of encephalomalacia consistent with a past infarction in the right

posterior frontal/parietal region and left occipital lobe.  (*Id.* at 8-9 (citing R. 101-02, 106-07,

2392-93) (additional citations omitted)).

The Commissioner responds that pursuant to 20 C.F.R. § 416.920a(b) and related case

law the ALJ was not required to rate the degree of functional limitation of any mental

impairment because he determined that none existed when he stated that there was little to no

evidence of any mental disorder likely to last one year or more, treatment therefor or associated

limitations.  (Resp., ECF No. 10, at 8-9 (citing R. 2023-24, 2031; *Rodriguez v. Sec'y of Health &*

*Human Servs.*, 46 F.3d 1114 (table), 1995 WL 45781, at *4 n.14 (1st Cir. Feb. 7, 1995); *Navarro*

*v. Berryhill*, No. CV 16-05645-JEM, 2018 WL 1155968, at \*4 (C.D. Cal. Mar. 2, 2018);

*McLaughlin v. Colvin*, No. 1:15-CV-27-JHR, 2015 WL 13229565, at \*4 (D. Me. Nov. 20, 2015);

*Depaz v. Astrue*, No. CV 11-03361-JEM, 2011 WL 6816629, at \*5 (C.D. Cal. Dec. 27, 2011))).

He notes that on this basis the ALJ rejected Dr. Crichlow's opinion and concluded that Plaintiff

could perform PRW. (*Id.* (citing R. 2023, 2031)). He observes that Plaintiff does not contend

that these findings are unsupported by substantial evidence but instead focuses on the ALJ's

failure to complete step two of the PRT. (*Id.* at 9 (citations omitted)). He maintains that Plaintiff

has therefore waived any challenge to the ALJ's step one "no-impairment finding," including in

his reply. (*Id.* at 10 (citation omitted)).

However, the Commissioner continues that in any event substantial evidence supports the

finding, as this Court concluded in response to Petitioner's challenge to it prior to remand. (*Id.*

(citing R. 18, 2023-24, 2079-80)). He adds that the purportedly contrary evidence highlighted by

Plaintiff in the instant request for review mirrors that rejected by the Court in its Report and

Recommendation except for the new 2021 MRI report showing two "old areas of

encephalomalacia" in the otherwise "grossly unremarkable scan" taken during Plaintiff's brief

hospitalization for acute alcohol intoxication, but Plaintiff never suggests that this diagnosis

limits his mental abilities in any way, only that it could "potentially impact" them. (*Id.* (citing R.

2351, 2392-93)). Lastly, he observes that diagnoses and speculation, without more, do not

equate to medically determinable impairments. (*Id.* (citing *Young v. Kijakazi*, No. CV 21-1610,

2023 WL 6143910, at \*6 n.11 (E.D. Pa. Sept. 20, 2023); *Edinger v. Saul*, 432 F. Supp. 3d 516,

529 (E.D. Pa. 2020); *Lugo v. Colvin*, No. CV 13-7598, 2016 WL 2910104, at \*2 (E.D. Pa. May

19, 2016))).

Pointing to his discussion of the evidence in his opening brief, and particularly Dr.

Vizza's findings, Plaintiff insists that the evidence establishes a medically determinable mental

impairment.  (Reply, ECF No. 11, at 2-3 (citing 20 C.F.R. § 416.913a(b)(1) for the proposition

that State agency psychologists are "highly qualified and experts in Social Security disability

determination")).  Furthermore, he maintains that the ALJ "first has to apply the PRT" before he

or she can determine that the degree of limitation is "none" or "mild," warranting a "not severe"

determination.  (*Id.* at 2 (citing 20 C.F.R. § 416.920a(d)(1))).  He denies that he must establish

that any impairment is "severe" before the ALJ's duty to apply the PRT is triggered.  (*Id.*).

### 2.    Analysis

In his opening brief in this matter, Plaintiff discussed at length what he believes to be

"evidence establishing the existence of a medically determinable mental health impairment."

(Pl.'s Br., ECF No. 9, at 6-9).  Thus, the Court rejects the Commissioner's contention that

Plaintiff waived any challenge to the ALJ's contrary finding on that point.  (*See* Resp., ECF No.

10, at 10).  Nonetheless, the Court agrees with the Commissioner that substantial evidence

supports the ALJ's conclusion.  In determining that Plaintiff did not suffer from a cognizable

mental impairment, the ALJ observed that Plaintiff mentioned only briefly a history of

depression but alleged no chronic mental illness, and at most limited evidence existed that

Plaintiff received any treatment for or had any limitations stemming from a mental impairment.

(R. 2023).  He pointed out that Dr. Crichlow's mental examination of Plaintiff, which Plaintiff

now invokes as evidence to establish a mental health impairment, revealed appropriate eye

contact; fluent speech; normal, coherent and goal-directed thought processes without delusions

or paranoia; full orientation to person, place, and time; intact attention and concentration; only

mildly impaired memory (and with good recall abilities); and fair insight and judgment.  (R.

2024 (citing Ex. B13F5-6)).  The ALJ summarized that, as a whole, the record provided "limited

to no confirmation" of a mental health disorder lasting one year or more, as required by the

regulations.  (*Id.*).  It is true that Plaintiff highlights additional evidence beyond Dr. Crichlow's

opinion that he says also establishes that he had a medically determinable mental health impairment, but the ALJ was not required to address every "tidbit" of evidence in the record. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Nor would this allegedly contrary evidence denude the ALJ's determination of its substantial support. *Simmonds*, 807 F.2d at 58.

Plaintiff correctly observes that he does not have to show that an impairment is severe for the ALJ to conduct the PRT, and that it is through that process that the ALJ determines whether an impairment is severe or not severe, but the severity issue is a red herring. (Reply, ECF No. 11, at 2 (citation omitted)). Contrary to Plaintiff's suggestion, there is simply no requirement that the ALJ take the nonsensical step of evaluating the severity of a functional limitation posed by a nonexistent impairment. In fact, the regulations and associated case law make clear that the ALJ "must *first* . . . determine whether [the claimant] ha[s] a medically determinable mental impairment(s)," and only "*[i]f*" one is established, he or she "must *then* rate the degree of functional limitation resulting from the impairment(s) . . . ." 20 C.F.R. § 416.920a(b)(1)-(2); *see also Rodriguez*, 1995 WL 45781, at *4 n.14 (1st Cir. Feb. 7, 1995) ("If there is insufficient evidence that a mental impairment exists, there will be presumably be no medical findings which would allow the SSA to complete the standard PRT[ ]."); *Navarro v. Berryhill*, 2018 WL 1155968, at *4 ("the ALJ plainly was not required to rate the severity of an impairment found not to exist"); *Depaz*, 2011 WL 6816629, at *5 (same); *McLaughlin*, 2015 WL 13229565, at *4 ("20 C.F.R. § 404.1520a requires the [ALJ] to use the prescribed procedure only if she determines that a mental impairment exists.").[1]

For these reasons, the Court declines to remand this matter on the basis that the ALJ did

---

[1] Tellingly, Plaintiff says nothing in his reply about these cases cited by the Commissioner. (*See generally* Reply, ECF No. 11).

not complete the entire PRT.

**B.    Change in RFC Exertional Level Following Remand**

**1.    The Parties' Positions**

Plaintiff first posits that the ALJ's unexplained change in the RFC from light to medium work following remand is unsupported by the medical evidence and "appears to be an attempt to avoid having to apply the borderline age analysis" that served as the basis for the remand because such an analysis coupled with a light RFC would have resulted in a finding of disability no later than Plaintiff's 55th birthday.  (Pl.'s Br., ECF No. 9, at 5; Reply, ECF No. 11, at 1-2). He claims that substantial portions of the four newly submitted exhibits were issued prior to the original unfavorable decision and from the remainder of the new evidence highlights the following records not specifically discussed by the ALJ: three chest x-rays collectively showing marked scoliosis with bony thorax deformity and mild lingula subsegmental atelectasis/scarring or pneumonia; two abdominal/pelvic CT scans revealing lower lumbar facet arthropathy and multilevel degenerative disc disease; a chest CT scan demonstrating severe dextroscoliosis of the thoracic spine, a small hiatal hernia and severe coronary artery calcification; and an exercise stress test halted due to fatigue.  (Pl.'s Br., ECF No. 9, at 5 (citing R. 2217, 2342, 2391, 2421, 2438-40, 2471, 2493)).

The Commissioner counters that when the Appeals Council vacates an ALJ's decision and remands a matter the ALJ owes no deference to the vacated decision, must conduct a de novo review, and may make different findings even where the record remains unchanged. (Resp., ECF No. 10, at 4-5 (citing *Leventhal v. Kijakazi*, No. 20-CV-3157, 2021 WL 5163202, at *9 (E.D. Pa. Nov. 5, 2021); *Neiswonger v. Saul*, No. CV 18-1306, 2019 WL 5895431, at *2 (W.D. Pa. Nov. 12, 2019); *Coleman v. Berryhill*, No. 3:17-CV-01824-RDM-GBC, 2019 WL 1323418, at *13 (M.D. Pa. Feb. 14, 2019), *report and recommendation adopted*, 2019 WL

1318247 (M.D. Pa. Mar. 22, 2019); *McPhaul v. Astrue*, No. CIV.A. 09-3207 JLL, 2011 WL 1375668, at *3 (D.N.J. Apr. 12, 2011); HALLEX I-2-8-18 (S.S.A. 2006))).  He observes that in this case, however, over 300 pages of new records were added upon remand, including testimony from an additional administrative hearing; a consultative examination showing unremarkable results, such as a normal gait and spine, no joint deformities, and full strength; improved back and neck pain with physical therapy; hospitalization notes suggesting that acute symptoms were caused by alcohol intoxication; physical examinations within normal limits and without relevant psychological issues; a lack of documentation for alleged pain and fatigue; and State agency findings that Plaintiff could perform medium work.  (*Id.* at 5-6 (citing R. 2211-2521)).  He accuses Plaintiff of ignoring this new evidence while focusing only on a handful of findings, many of which are either diagnoses (which do not establish an impairment let alone a disability) or are from records created after Plaintiff became ineligible for benefits because he had started working again.  (*Id.* at 7 (citing *Edinger v. Saul*, 432 F. Supp. 3d 516, 529 (E.D. Pa. 2020))).  Furthermore, he denies that the ALJ was required to explicitly discuss each of the new records but adds that in any event he acknowledged their existence and cited to specific pages therein. (*Id.* (citing *Hur*, 94 F. App'x at 133)).

Regarding the borderline age analysis, the Commissioner points out that the ALJ properly did not reach this determination because it would have taken place at step five of the sequential analysis, whereas the ALJ determined at step four that Plaintiff could perform his prior jobs.  (*Id.* at 6 (citing R. 2032; 20 C.F.R. § 416.920(a)(4))).  Additionally, he notes that courts have rejected speculation following the ALJ's denial of a claim that the RFC was designed to cut short the five-step analysis.  (*Id.* (citing *Granados v. Comm'r*, No. CIV.A. 13-781 JLL, 2014 WL 60054, at *9 n.7 (D.N.J. Jan. 7, 2014))).

2.    **Analysis**

In his reply, Plaintiff does not attempt to distinguish any of the Commissioner's cited authorities, which establish that "[w]hen the Appeals Council vacates a final decision of the Commissioner, the ALJ must consider all pertinent issues *de novo*."  HALLEX I-2-8-18, 1993 WL 643058; *see Leventhal*, 2021 WL 5163202, at *9 ("Once vacated, the new ALJ was required to issue a new decision and consider all pertinent issues de novo.") (citing *Butterfield v. Astrue*, No. 06-0603, 2010 WL 4027768 (E.D. Pa. 2010)); *Neiswonger*, 2019 WL 5895431, at *2 (quoting HALLEX I-2-8-18); *Coleman*, 2019 WL 1323418, at *13 ("The ALJ was not bound by a prior vacated decision."); (*see also* Reply, ECF No. 11, at 1-2).  As long as the ALJ's new RFC finding is backed by substantial evidence, it should not be disturbed.  *Hartranft*, 181 F.3d at 360. Here, in finding that Plaintiff could perform a full range of work at the medium exertional level, the ALJ highlighted, *inter alia*, new medical evidence showing a completely negative body systems review (including no pain or shortness of breath); no complaints of symptoms stemming from his scoliosis or hepatic periportal edema; no loss of function from his epigastric pain or indication that it was chronic, unrelenting or unrelieved; improved periumbilical abdominal pain within 24 hours of hospitalization for acute alcohol intoxication; no organ damage (although reported fatigue) from his diabetes; alcohol abuse in remission (albeit with acute relapses); treatment for his pancreatitis without recent chronic flare-ups; largely stabilized liver disorder; physical examinations within normal limits and without relevant psychological problems; and improved back and neck pain with physical therapy.  (R. 2028-29 (citing Exs. B28F at 5, 8, 15-17; 30F at 101-13, 118, 155, 157-61; 31F at 55)).  Plaintiff insists that the altered RFC finding is merely a smokescreen to mask the ALJ's avoidance of the borderline age analysis, but in light of the substantial evidence cited by him in support of his decision, this Court declines to engage in speculation about the ALJ's purported motive in reaching a different conclusion about Plaintiff's

RFC in the post-remand administrative decision. *See Granados*, 2014 WL 60054, at *9 n.7 ("[T]he Court will not entertain Plaintiff's speculation as to the ALJ's motive. The task before this Court on appeal is to review whether the ALJ's decision is based on substantial evidence."). Accordingly, the Court denies Plaintiff's request for remand based on the change in his RFC.

### C.  Past Relevant Work

#### 1.  The Parties' Positions

Plaintiff claims that the ALJ's determination that he could perform his PRW as a home health aide is not supported by substantial evidence. (Pl.'s Br., ECF No. 9, at 10). Curiously, however, he then excerpts his testimony regarding his work as a *computer repairman* and notes that *it* does not constitute PRW because he did not earn enough to qualify as substantial gainful activity (SGA). (*Id.* at 10-11 (citing 20 C.F.R. § 416.960(b)(1))). The Commissioner responds that although the ALJ noted the VE's testimony regarding the computer repair work, he never found Plaintiff's earnings sufficient to qualify the work as SGA and thus PRW and instead only set forth the SGA-level earnings from his other two previous jobs, gas station manager and home health aide. (*Id.* (citing R. 2031)). Although the Commissioner acknowledges that the ALJ "could have been clearer" when he stated that Plaintiff could perform "all past relevant work, including work as a gas station manager," he never actually found that Plaintiff's time as a computer repairman constituted PRW. (*Id.* at 11-12 (citing R. 2031)). He adds that insofar as the ALJ made such a finding, the error would be harmless because a claimant is not disabled if he can perform *any* past relevant work, and here the ALJ found that Plaintiff's position as a gas station manager, and apparently as a home health aide, qualified as PRW. (*Id.* at 12 (citing *Mederos v. Colvin*, 2015 WL 5167109, at *9 (D.N.J. Sept. 3, 2015))). In reply, Plaintiff briefly highlights the ALJ's concession that his computer repair position was not PRW. (Reply, ECF No. 11, at 3).

2.    **Analysis**

To the extent that Plaintiff attacks the ALJ's determination that his home health aide work was PRW, the Court agrees with the Commissioner that this claim is fatally unexplained. (*See generally* Pl.'s Br., ECF No. 9, at 10-11).  Turning to Plaintiff's more developed contention that his computer repair work was also not PRW, the Court finds that any error on this point was harmless because he unquestionably had PRW as a gas station manager and pursuant to 20 C.F.R. § 416.960 if "you have the residual functional capacity to do your past relevant work, [the ALJ] will determine that you can still do your past work and are not disabled."  20 C.F.R. § 416.960(b)(3); (*see also* R. 2031 (the ALJ singling out Plaintiff's "work as a gas station manager" as PRW and noting that his earnings for it reached SGA levels)).  Indeed, even Plaintiff does not challenge the ALJ's PRW determination as to this position, instead focusing on the ALJ's suggestion that the computer repair work was also PRW.  (Pl.'s Br., ECF No. 9, at 10-11; Reply, ECF No. 11, at 3).  However, even if[2] the ALJ improperly found that the computer repair job was also PRW, that conclusion would merely constitute harmless error.  *Mederos v. Colvin*, 2015 WL 5167109, at *9 n.2 ("ALJ[ ]'s failure to show that Plaintiff's janitor work constituted past relevant work was harmless error because Plaintiff can still perform her other past relevant work as a home health aide") (citing *Rechenski v. Williams*, 622 F.3d 315, 341 (3d Cir. 2010)).  Accordingly, the request for remand on the proffered basis is denied.

---

[2]  As the Commissioner acknowledges, the ALJ's decision on this point is not a model of clarity.  The ALJ found that Plaintiff could perform "all" PRW and noted the VE's testimony about the computer repair position, but he omitted it from his SGA discussion involving the other two positions and did not specifically single it out as PRW, unlike the gas station manager position.  (R. 2031).  In any event, whether or not the ALJ considered the computer repair position to be PRW is immaterial because, as noted above, it is undisputed that he appropriately found that Plaintiff could perform other PRW.

**D.    Exertional Level of Plaintiff's PRW as a Gas Station Manager**

    **1.    The Parties' Positions**

Lastly, Plaintiff complains that in classifying his PRW as a gas station manager as light work based on his resume description of it, the ALJ disregarded the testimony of VEs at his 2019 administrative hearing and on remand that this position constituted medium work pursuant to the Dictionary of Occupational Titles (DOT), with the first VE adding that it was actually performed as heavy work.  (Pl.'s Br., ECF No. 9, at 11 (citing R. 91, 2031, 2061)).  He maintains that the ALJ's analysis improperly assumed without basis that the VEs were unfamiliar with Plaintiff's work experience and that the VE at the remand hearing had not reviewed his resume.  (*Id.* at 12).  Arguing that the VE's testimony is consistent with the description of the position from the DOT, which he sets forth in his brief, he notes that occupational evidence provided by a VE should generally comport with that provided by the DOT.  (*Id.* (citing SSR 00-4p)).  He adds that in making disability determinations the SSA should rely primarily on the DOT for information about how a position is performed "in the national economy."  (*Id.* (citing SSR 00-4p)).

The Commissioner responds that the ALJ properly relied on Plaintiff's own description of his job duties as a gas station manager to conclude that the role as actually performed by him was properly classified as light work because he did not perform the more laborious tasks contemplated by the DOT's general description.  (Resp., ECF No. 10, at 12 (citing DOT 185.167-014, 1991 WL 671291)).  He contends that Plaintiff has failed to carry his burden of showing that the ALJ's determination was either erroneous or harmful (i.e., that it affected the outcome of the matter).  (*Id.* at 13 (quoting *Holloman v. Comm'r*, 639 F. App'x 810, 814 (3d Cir. 2016))).  He observes that at step four of the sequential analysis the ALJ must consider both how the job is normally performed in the national economy and how the claimant actually performed it, but if he can do either he is not disabled, and the ALJ need not consider the other possibility.

(*Id.* at 13-14 (citing 20 C.F.R. § 416.960(b)(2); *Jason S. v. Kijakazi*, No. 4:21-cv-1598, 2023 WL 3728689, at *5 (M.D. Pa. May 30, 2023))).  The Commissioner acknowledges that the DOT may aid in the analysis, but he observes that in this instance the ALJ appropriately focused on how Plaintiff actually performed the position, making Plaintiff himself the primary source for determining its requirements and obviating the need to consider the DOT's general description of how such a position is normally performed once the ALJ reached his conclusion.  (*Id.* at 13 (citing SSR 82-61, 1982 WL 31387, at *2; SSR 82-62, 1982 WL 31386, at *3)).  Finally, he adds that Plaintiff suffered no prejudice because the ALJ's determination that he could perform this light-work position was consistent with his RFC finding that Plaintiff could perform medium work.  (*Id.* at 14 (citing 20 C.F.R. § 416.967(c))).

In reply, Plaintiff largely repeats his earlier arguments and further highlights his hearing testimony and disability report stating that in his role as gas station manager he had to lift 50 pounds, consistent with a medium exertional level.  (Reply, ECF No. 11, at 4).  He also concludes that "[a] review of the resume does not support" the notion that Plaintiff's prior gas station manager position was performed at a light exertional level.  (*Id.*).

## 2.    Analysis

Substantial evidence supports the ALJ's determination that Plaintiff's PRW as a gas station manager, as actually performed by him, constituted light work.  Plaintiff classified this position in his resume as "General Manager, Partner" for a company that "was involved in management and operation of multiple service station franchises with major oil companies . . . ." (R. 287).  During his 17 years as general manager and partner, he handled "every aspect of company operations" and had "full . . . responsibility" for profitability, which, according to Plaintiff, he consistently grew during his tenure.  (*Id.*).  Significantly, his own statement of his duties included none of the physical tasks set forth in the more generic description in the DOT.

*See* DOT at 185-.167-014, 1991 WL 671291.  Based on this evidence, the ALJ characterized

Plaintiff's time spent in this role as "extensive business management experience" and determined

that "clearly the scope of his gas station management work from 1993 to 2010 does not suggest

he simply worked behind a counter selling gas and loading coolers with beverages. . . . [T]he

claimant was much more of a manager, than a laborer."  (R. 2031 (citing Ex. B12E)).

Plaintiff notes that in his initial hearing testimony and disability report he claimed that

this PRW required him to lift 50 pounds.  (Reply, ECF No. 11, at 4 (citations omitted)).

However, the ALJ did not have to credit these litigation submissions over the description of

duties set forth in Plaintiff's own resume.  *See Simmonds*, 807 F.2d at 58 (a decision backed by

substantial evidence will stand despite the fact that the record could support a contrary

conclusion).  Nor was the ALJ required to credit the VE testimony adopting the DOT's general

description of a similar position in "the national economy" in determining whether Plaintiff

would be able to again perform the actual position's responsibilities as he once did.  *See Jason*

*S.*, 2023 WL 3728689, at *5 ("If a claimant can do his or her past relevant work, as it was

actually performed *or* as it is generally performed in the national economy, the claimant will be

found not disabled.") (citation omitted).  Whether the second VE was aware[3] of Plaintiff's

resume or not, it serves as substantial evidence for the ALJ's determination, notwithstanding the

differences between the job description set forth therein and the one for the most analogous job

---

[3] Plaintiff submitted the resume after the initial hearing but prior to the one on remand.
(R. 30-59, 286-287, 2039-63).  He takes issue with the ALJ's suggestion that the VE "was likely
unaware of th[e] management experience" set forth in the resume given his characterization of
the position's exertional level, but the VE's reasons, if any, for not relying on Plaintiff's own
description of his duties does not affect the result here.  (Pl.'s Br., ECF No. 9, at 12); *see Jason*
*S.*, 2023 WL 3728689, at *5 ("The claimant is the 'primary source for vocational documentation,
and statements by the claimant regarding past work are generally sufficient for determining the
skill level; exertional demands and nonexertional demands of such work.'") (citing SSR 82-62,
1982 WL 31386, at *3).

title in the DOT.  Accordingly, Plaintiff's request for remand is denied.


**VI.    CONCLUSION**

For the reasons set forth above, Plaintiff's request for review is denied.



BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge